# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO. 21-21543-CIV-GOODMAN
### [CONSENT CASE]

ROBERT MICHAELSON OF ADVISORY
TRUST GROUP, LLC, in his capacity as
Debtor Representative and Liquidating Trustee,

    Plaintiff,

v.

PETER BARONOFF, KEITH REUBEN,
BRIAN DUNN, DAVID ARMSTRONG,
JAMES HOPWOOD, RICHARD GOLD,
BRYAN DAY, STAN GRABISH, RICHARD
COHEN, STEVEN HELLAND, MALINDA
BARONOFF, SHANNA BARONOFF, and
JOHN DOES 1-100,

    Defendants.
_____/

### AGREED ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION[1]

The parties have filed a joint notice requesting that the Court enter this Order ("ESI Order") establishing a protocol for the production of Electronically Stored Information

---

[1] The Undersigned substantively modified the proposed agreed order in Sections VI.A and B. I also made minor edits to correct syntax and grammar issues.

("ESI") in this matter. [ECF Nos. 143; 143-2]. Based on the parties' stipulation, the Undersigned **orders** as follows:

I.      SCOPE

   A.   The procedures and protocols outlined herein govern the search for, review and production of ESI (as defined below) by a party during the pendency of this litigation.

   B.   As used in this order, the terms "ESI" or "Electronically Stored Information" means discoverable documents and data existing in electronic form including e-mail, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible electronically stored information relevant to the claims or defenses of any party subject to discovery pursuant to Fed. R. Civ. P. 26.

   C.   The parties shall conduct discovery in a cooperative and collaborative manner.  In accordance with the Federal Rules, the parties agree to seek discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.

II.     IDENTIFICATION OF RESPONSIVE ESI.

   A.   Documents and ESI which are neither privileged nor otherwise protected shall be timely reviewed and produced in accordance with this ESI Order. After receiving requests for production of documents, the party making the production (the "Producing Party") shall conduct a reasonable and good faith search for responsive ESI.

  **B.**  Nothing in this Order shall modify the provisions of Fed. R. Civ. P. 26(b)(2)(B), which applies in this case.

  **C.**  **Search Terms.** No later than ten days after the date established by the Court for serving initial request for production, and to the extent necessary to enable a responding party to locate ESI responsive to any particular request, the parties shall meet and confer in a good faith effort to reach agreement as to the method of searching for, and the words, terms, and phrases to be used to locate and identify potentially responsive ESI. The parties shall also meet and confer in a good faith effort to agree on the timing and conditions of any additional searches that may become necessary in the normal course of discovery.

  **D.**  **Custodians and Electronic Systems.** The parties shall meet and confer in good faith to identify the custodians whose email and other ESI will be searched, and any other electronic systems that will be searched, using the agreed search terms. The parties shall also discuss prioritizing or tiering custodians, with the first priority custodians searched and reviewed first, and any further custodians searched only if the party requesting the discovery ("Requesting Party") identifies why searches of additional custodians are necessary. The parties shall also meet and confer regarding the appropriate date range for searching any sources of ESI.

  **E.**  **System Files.** Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program

files from document review and production) need not be processed, reviewed or produced. The parties shall meet and confer on any additional file types that also need not be processed, reviewed, or produced.

    **F.**    **Non-Discoverable ESI**. Consistent with the proportionality standard in Fed. R. Civ. P. 26(b)(1), and absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

    1.    ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

    2.    Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data more accessible elsewhere;

    3.    Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

    4.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    5.    On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

    6.    Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

    **7.**    Server, system, network, or software application logs;

    **8.**    Data remaining from systems no longer in use that are unreadable on the systems in use;

    **9.**    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

    **10.**    De-NISTing - Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from [https://www.nist.gov/itl/ssd/software-quality-group/nationalsoftware-reference-library-nsrl/nsrl-download/current-rds](https://www.nist.gov/itl/ssd/software-quality-group/nationalsoftware-reference-library-nsrl/nsrl-download/current-rds);

    **11.**    Structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .XML, .DTD, etc.);

    **12.**    Operating System files that do not store user-created content (e.g., CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, etc.); and

    **13.**    Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (e.g., BAK, BIN, CFG, DBF, DAT, JS, JSON, JAR, LUA, MSB, RES, WINNT, YTR, etc.).

## III. PRODUCTION OF ESI

**A.     General Document Production Format.** The following provisions shall **generally** govern the production format and procedure for ESI other than databases or spreadsheets.

**1.     Format.** All ESI, other than databases or spreadsheets, shall be produced in a reasonably usable form. Such reasonably usable form shall be in a black and white single- or multi-page TIFF image at 300 DPI, Group IV compression with extracted or OCR text and, if available, a database/metadata load file that shall contain the metadata fields listed below in Section III.A.2. If ESI is produced with OCR, OCR text files shall be provided along with the production. If ESI is produced with extracted text, extracted text shall be provided for all documents unless it cannot be obtained. To the extent a document is redacted, extracted or OCR text files for such document shall not contain text for the redacted portions of the document. Each TIFF image will be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production padded to the same number of characters; (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. Each TIFF image file shall be named with the Bates Number corresponding to the number assigned to the document page

contained in that image. In the event a party determines that it is unable to produce in the format specified in this section without incurring unreasonable expense, the parties shall meet and confer to agree upon an alternative format for production.

    **2.**    **Metadata.** To the extent that any of the following metadata fields associated with all applicable documents are available, the Producing Party will produce those metadata fields to the Requesting Party: file name, file size, author, application date created, file system date created, application date last modified, file system date last modified, date last saved, original file path, subject line, date sent, time sent, sender/author, recipient(s), copyee(s), and blind copyee(s). For emails with attachments, the Producing Party will indicate when a parent-child relationship between the message and the attachment exists. A Producing Party shall also produce a load file with each production in Concordance (.dat) format and an image load file in Opticon (.opt) format with the following fields: Starting Bates; Ending Bates; Begin Attach; End Attach; and Source (custodian/location from which document was collected). If any metadata described in this section does not exist, is not reasonably accessible, is not reasonably available, or would be unduly burdensome to collect or provide, nothing in this ESI Order shall require any party to extract, capture, collect or produce such metadata.

    **3.**    **Appearance.** Each document's electronic image shall convey the same information and image as the original document except for redactions for

any privilege or personal identifiable information. Documents shall appear with any revisions and/or comments visible and printed. Documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer in an attempt to resolve the problems.

4. **Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the Producing Party or shall be documented in a load file or otherwise electronically tracked.

5. **Color.** Documents containing color need not be produced in color in the first instance. However, if good cause exists, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents requested to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause, but need not make such production until the parties reach agreement regarding apportionment of any additional costs associated with the production of documents in color.

6. **Exception Files.** Files that cannot be produced or imaged due to technical difficulties shall be identified as exception files and identified on a log listing the file's name, custodian, and reason for the exception. Common exception

files include, without limitation, corruption, password protection, digital rights management, or proprietary software associated to the file.

**B.     Production Format for Information from Databases and Spreadsheets.**

The following provisions shall generally govern the production format and procedure for databases and spreadsheets:

    **1.     Spreadsheets.** Except if redacted or other special circumstances, Excel files, .csv files and other similar spreadsheet files will be produced in native format ("Native Files"). Native Files will be provided in a self-identified "Natives" directory. Each Native File will be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files will be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet will be included in the .DAT load file indicating the relative file path to each native file on the Production Media. Native Files will be produced with extracted text and applicable metadata fields if possible and consistent with Section III.A.2 above. For documents that contain redacted text, the parties may either apply the redactions directly on the native file itself or produce TIFF image files with burned-in redactions in lieu of a Native File and TIFF placeholder image. Each Producing Party will make reasonable efforts to ensure that Native Files, prior to conversion to TIFF, reveal hidden data from

redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "########".) Under these circumstances, all single-page TIFF images shall include row and column headings.

2. **Databases.** If responding to a discovery request requires production of ESI contained in a database, the Producing Party at its option, may provide the database as a Native File pursuant to Section III.B.1 above, or may comply with the discovery request by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The first line of each such file will, to the extent possible, show the column headers for each field of data included. The parties shall meet and confer as needed to finalize the appropriate data extraction and production format for specific information contained in particular databases.

3. **Requests for Other Native Files.** Other than as specifically set forth above, a Producing Party need not produce documents in native format. If good cause exists for the Requesting Party to request production of certain ESI in native format, the Requesting Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The Producing Party shall not unreasonably deny such requests

if the Requesting Party has demonstrated good cause for receiving the ESI in native format. Each file produced in response to such requests will be produced to the extent possible consistent with Section III.B.1 above.

C. **Duplicate Production Not Required.** ESI files need only be produced once. The Producing Party will apply global deduplication to responsive ESI based on MD5 Hash values or an equivalent deduplication key. Email, will be deduplicated by family, not on an individual basis. Additionally, to the extent reasonably accessible, all custodians of removed duplicates will be listed in an "All Custodians" field and identified by full name of the individual or departmental custodian. Stand-alone documents may be deduplicated against email attachments provided that the email attachment is the duplicate that is produced and the custodian(s) of the removed duplicate(s) are entered into the All Custodian field. All natives, even deduplicated versions, will be retained in a format readily accessible to be produced upon request.

D. **No Designation of Discovery Requests**. Production of hardcopy documents and ESI produced as set forth in this Protocol need not be organized and labeled to correspond to the categories in the particular document requests. Should a Receiving Party make a reasonable request for identification by Bates number of groups of Documents that the Producing Party can easily and readily identify, the Producing Party shall cooperate and provide such information as soon as reasonably practicable considering the scope of the request and the volume of documents implicated.

  **E.** **Privilege Logs.** A party withholding documents based on one or more claims of privilege will produce a privilege log. There will be no obligation to produce privilege logs identifying attorney-client communications concerning case strategy or the course of litigation that occur following the commencement of this lawsuit, including the efforts to locate and collect documents and ESI in response to a discovery request in this matter.

**IV.** **HARD COPY DOCUMENTS**

  The Parties shall meet and confer regarding the method of producing any hard copies of documents which are to be produced in this case.

**V.** **RULE 502(d) CLAWBACK AGREEMENT**

  **A.** **No Waiver of Disclosure.** Section V is agreed to pursuant to Fed. R. Evid. 502(d). Any Producing Party that discloses or produces a document or information that it thereafter claims to be privileged or otherwise protected from discovery ("Protected Information"), in whole or in part, shall not be deemed to have waived any applicable privilege or protection by reason of such disclosure or production in this or any other action. The protocols regarding inadvertent disclosure of Protected Information are set forth in the *Confidentiality Agreement and Protective Order* and incorporated as if fully set forth herein.

**B.** **Effect**. The provisions in Section IV of this ESI Order are intended to protect all parties to this action, to the fullest extent permissible by law, against any unintended waiver of the attorney-client privilege and/or the attorney work product doctrine that might otherwise arise from the inadvertent disclosure of privileged or protected documents or information. These provisions are intended to override any contrary law or presumptions if, and as, applicable and permissible. The parties' execution of this ESI Order, and compliance with its terms, shall be understood, for all purposes within and outside this action, to constitute reasonable and prompt efforts to preserve privileges and protections from discovery in respect to any inadvertently disclosed document or information.

## VI. MISCELLANEOUS PROVISIONS

**A.** If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may seek individual relief from this ESI Order by setting the matter for a hearing in accordance with the Court's Discovery Procedures Order.

**B.** The Defendants shall, to the fullest extent as reasonably appropriate, coordinate requests for production of documents and ESI. However, nothing in this Order shall preclude any individual Defendant from serving its own requests for documents and ESI pursuant to Rule 34 of the Federal Rules of Civil Procedure, or otherwise, or seeking leave of the Court with respect thereto. Any request for leave shall be made in accordance with the Court's Discovery Procedures Order.

**C.** Each party will presumptively bear its own costs of production. However, the parties reserve the right to seek cost shifting as appropriate.

**D.** Nothing in this ESI Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at the appropriate time.

The parties may agree to modify or waive the terms of this ESI Order in writing signed by counsel for the affected parties.

DONE and ORDERED in Chambers, in Miami, Florida, on March 17, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

SILLS CUMMIS & GROSS P.C.
*Attorneys for Plaintiff*

By: */s/ David B. Newman*
     David B. Newman
     101 Park Avenue,
     28th Floor
     New York, New York 10178

BERGER SINGERMAN LLP
*Attorneys for Plaintiff*

By: */s/ Paul S. Singerman*
     Paul S. Singerman
     1450 Brickell Avenue
     Suite 1900
     Miami, Florida 33131

TEIN MALONE PLLC
*Attorneys for Defendant Keith Reuben*

By: */s/ Michael R. Tein*
    Michael R. Tein
    3059 Grand Avenue
    Suite 340
    Coconut Grove, FL 33133

KAPLAN ZEENA LLP
*Attorneys for Defendants Brian Dunn, David Armstrong, Richard Gold, Bryan Day and Richard Cohen*

By: */s/ James M. Kaplan*
    James M. Kaplan
    2 South Biscayne Boulevard
    Suite 3050
    Miami, Florida 33131

BRODSKY FOTIU-WOJTOWICZ, PLLC
*Attorneys for Defendants Peter Baronoff, Shanna Baronoff and Malinda Baronoff*

By: */s/ Benjamin H. Brodsky*
    Benjamin H. Brodsky
    200 SE 1st Street
    Suite 400
    Miami, Florida 33131

PARKER, HUDSON, RAINER & DOBBS, LLP
*Attorneys for Defendants Stanley Grabish and Steven Helland*

By: /s/ *Bryan E. Bates*
    Bryan E. Bates
    303 Peachtree Street NE
    Suite 3600
    Atlanta, GA 30308

BURR AND FORMAN LLP
*Attorneys for Defendant James Hopwood*

By: /s/ *Richard Robinson*
    Richard Robinson
    Las Olas Centre II
    350 East Las Olas Blvd
    Suite 1440
    Ft. Lauderdale, FL 33301