UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**CASE NO. 21-21543-CIV-GOODMAN**

ROBERT MICHAELSON of ADVISORY
TRUST GROUP, LLC, in his capacity as
Debtor Representative and Liquidating
Trustee,

      Plaintiff,

vs.

PETER BARONOFF, KEITH REUBEN,
BRIAN DUNN, DAVID ARMSTRONG,
JAMES HOPWOOD, RICHARD GOLD,
BRYAN DAY, STAN GRABISH, RICHARD
COHEN, STEVEN HELLAND, MALINDA
BARONOFF, SHANNA BARONOFF, and
JOHN DOES 1-100,

      Defendants.

_____/

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS BY**
**DEFENDANTS STANLEY GRABISH AND STEVEN HELLAND**

**INTRODUCTION**

Plaintiff Robert Michaelson of Advisory Trust Group, LLC, in his capacity as Debtor

Representative and Liquidating Trustee ("Plaintiff"), submits this Memorandum of Law in

Opposition to the Moton to Dismiss the Second Amended Complaint ("SAC") by Defendants

Stanley Grabish ("Grabish") and Steven Helland ("Helland").  Grabish and Helland seek two

bites of the apple by not only joining in Defendants' Joint Motion [ECF #252], but by also

burdening Plaintiff and the Court by filing their own separate motion supported by an overlength

brief (L. Civ. R. 7.1(c)(2)) that parrots many of the same arguments already made in the Joint

Motion.[1]  Regardless of the number of bites they take, Grabish and Helland cannot avoid the core issues – as the SAC plausibly alleges, they not only engaged in independent breaches of their fiduciary duties, but they also stood silently by while knowing that other officers and directors were engaging in bad acts.

Like Defendants in the Joint Motion, Grabish and Helland gloss over or maybe purposely avoid reference to the revised and new allegations in the SAC that implicate them in the wrongdoing, contending (wrongfully) instead that Plaintiff concedes these two Defendants were merely secondary players who "did not actually have authority or control."  [ECF #253 at 2-3]. For instance, while Grabish quotes from countless allegations of the SAC, he does not reference paragraph 26, which states:

> According to Grabish's LinkedIn page, he provided strategy, modeling and budgeting for the Companies' facilities in addition to managing the accounts payable vendor base and negotiating payment plans.

Similarly, although not cited in the SAC, the Court can take judicial notice of Helland's LinkedIn page for the period June 2014 through November 2018, a copy of which is annexed as Exhibit A hereto, in which Helland states that he was an Operating Partner and head of business development and investor relations at Promise Healthcare Group, LLC, and in that role:

> Lead all Capital market activities, industry M&A, Business Development and Investor Relations, across the integrated system platform. Lead all activities of acquisition targets and dispositions of noncore assets, including negotiations, deal structures/financings and close.

As set forth in detail herein, Plaintiff has alleged plausible claims against Grabish and Helland and their motion should be denied in its entirety.

---

[1]  Plaintiff incorporates by reference herein the arguments made in opposition to Defendants' Joint Motion to Dismiss.  [ECF #252.]

**ARGUMENT**

**I.    THE SAC ALLEGES PLAUSIBLE CLAIMS FOR RELIEF AGAINST GRABISH AND HELLAND**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all a plaintiff need do is "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not rise to a "probability requirement," but requires more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiffs well-pleaded facts as true." *Tershakovec v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 116130, at *6 (S.D. Fla. July 12, 2018).

Fed. R. Civ. P. 8 provides "that any pleading that includes a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Dismissal under Rules 8(a)(2) and 10(b) is appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). However, the Eleventh Circuit has explained that if a defendant can determine the claim against him and identify the facts relevant to each claim, especially where prior paragraphs are organized and broken down into subsections, the complaint will not be dismissed as a shotgun pleading. *Id.* at 1324-25 (although the count was not a model of efficiency or specificity, it adequately put parties on notice of specific claims against them and factual allegations supporting those claims).

**A.    The SAC Contains Sufficient Factual Allegations Regarding Grabish And Helland's Responsibilities, Authority, And Control**

The gravamen of Grabish and Helland's motion is that they lacked the necessary

corporate authority to prevent or modify the alleged wrongdoing and harm the Companies suffered as alleged in the SAC.  [ECF #253 at 7-17].  In essence, their position is that they effectively owed no fiduciary duties whatsoever to the Companies because they were just following orders and had no vote on the Boards.  To the contrary, Grabish and Helland did owe the Companies fiduciary duties, and the SAC contains sufficient allegations demonstrating that Plaintiff has plead plausible claims against them.

Grabish and Helland first argue that Plaintiff's fiduciary duty claims should be dismissed because they did not have "discretionary authority over, or the power to prevent the" alleged wrongful conduct.  [ECF #253 at 8].  But Plaintiff alleges that they did have the power to prevent the wrongful conduct and they instead sat idly by while the Companies were looted and destroyed.  The SAC alleges that Grabish and Helland, among other things: (1) prepared false and misleading financial information and presented it to the Boards, Wells Fargo, and Crowe (the Companies' auditor), (2) attended Board meetings where misleading information was presented to the Boards (or relevant information was withheld from the Boards) prior to votes on corporate actions despite Grabish and Helland's knowledge of the wrongdoing, and (3) that the Centric report advising that iCare was not capable of being the Companies' EHR vendor had not been disclosed to the Boards when Grabish was on the Selection Committee.  [ECF #253 at 7; SAC, ¶¶ 209, 217, 219-23, 227-28, 231, 239, 240, 242, 244-51, 257-58, 265, 266, 293-95, 327, and 394].

Plaintiff alleges that Grabish and Helland had the power and responsibility to affect these events. The emails cited in the SAC establish that these two Defendants were intimately involved in and had knowledge of what was going on at the highest levels within the Companies.  [*Id.* at ¶¶ 24, 26; Exhibit B to Joint Motion].  Indeed, as Plaintiff alleges in the SAC, if Grabish and

Helland would have spoken up or voiced their objections or disclosed the wrongdoing that they knew of to the Boards, at least some of the damage to the Companies could have been prevented. [*Id.*, ¶¶ 240, 585-88, 590-93, 595, 621-22, 623-27, 628-29].  But not once did Grabish or Helland voice their objections to any of the wrongdoing or even tender their resignations in protest.  They did not tell Wells Fargo that the financial information was not accurate.  Instead, they did nothing.

In support of their argument that they did not have the power to prevent any of the challenged actions, Grabish and Helland rely primarily on a case from the Southern District of New York analyzing Pennsylvania law, *In re Nine West LBO Sec. Litig.*, 505 F. Supp.3d 292, 316 (S.D.N.Y. 2020); but this case is distinguishable.  In *Nine West*, the shareholder plaintiffs' claims were based on a theory that the directors had breached their fiduciary duties to the company in connection with the process leading up to the decision to sell the company resulting in the inadequate consideration of $15 per share and the company's eventual bankruptcy.  *Id.* at 302.  Thus, *Nine West* dealt with allegations that the defendants failed to conduct a "reasonable investigation" of the challenged transaction.  The plaintiffs did not allege active wrongdoing and misconduct by the directors (such as falsified financial records) or that information was withheld from the Board with the assistance of the officer defendants, as Plaintiff alleges in this action. *Id.* at 311-12.

Moreover, the SAC alleges that if Grabish and Helland had acted in accordance with their fiduciary duties, the Companies would have taken different actions as early as 2016, which actions would have protected the Companies and their creditors. [SAC, ¶¶ 240, 585-88, 590-93, 595, 621-22, 623-27, 628-29].  For example, as set forth in detail in the SAC, Helland and Grabish provided misleading information to the Boards, Crowe, and Wells.  The information

provided to Wells and Crowe was not information that Grabish and Helland first had to provide to the PHI or PHI or Success Boards (*i.e.*, it should have been sent directly to Wells and Crowe). Thus, it is irrelevant whether the directors failed to provide the adequate level of oversight with respect thereto.

In addition, Grabish was chair of the Selection Committee directly responsible for implementing iCare and providing information to the PHG Board regarding iCare. Helland and Grabish each could have protected the Companies and avoided the consequences set forth in the SAC by taking actions consistent with their fiduciary duties, like disclosing the Centric Report to the Boards. But they failed to do so. This is different from *Nine West* where the officers' actions could not have prevented the single transaction from occurring.

Like the other Defendants in the Joint Motion, Grabish and Helland similarly misapprehend (or misstate) the law in arguing that corporate officers do not have fiduciary duties if the Board members run the company for their own personal gain. However, company officers cannot simply ignore wrongdoing by directors or engage in their own wrongdoing with impunity. "Directors and officers of a corporation are jointly and severally liable if they jointly participate in a breach of their fiduciary duties." *Federal Deposit Ins. Corp. v. Anders*, No. S-87-430, 1991 U.S. Dist. LEXIS 20411, at *20 (E.D. Cal. July 1, 1991) (citing *Radol v. Thomas*, 772 F.2d 244, 259 (6th Cir. 1985); *see also Coley v. Eskaton*, 264 Cal. Rptr. 3d 740, 753 (Cal. Ct. App. 2020) ("[C]orporate directors and officers may be liable for corporate wrongs when they authorize[], direct[], or in some meaningful sense actively participate[] in the wrongful conduct."); *United Homes, Inc. v. Moss*, 154 So. 2d 351, 354 (Fla. Dist. Ct. App. 1963) ("Even if it could be said that Abel was a stranger to the corporation, he participated with an officer-director of the corporation in the commission of an act constituting a breach of duty owed by the officer-

director to the corporation. The 'stranger,' then, equally with the officer-director, committed a wrong and ought not to be allowed to derive profit from it.").

Corporate officers who close their eyes to wrongdoing by directors may also be held liable. *See Radol*, 772 F.2d at 259 ("The law is clear that directors and officers of a corporation are jointly and severally liable if they . . . acquiesce in, or conceal a breach by a fellow officer or director."); *Resolution Trust Corp. v. Block*, 924 S.W.2d 354. 357 (Tenn. 1996) (same) (citing 3 Fletcher Cyclopedia of the Law of Private Corporations, § 1002 (1990 Rev. Ed.)); *Trieweiler v. Sears*, 689 N.W.2d 807, 835 (Neb. 2004) (same) (citation omitted)).[2]

In addition, officers may be liable for aiding and abetting the directors' breaches. Both Florida and California law recognize a cause of action for aiding and abetting the breach of a fiduciary duty, which includes four elements: (1) the primary wrongdoer owes a fiduciary duty to the company; (2) the primary wrongdoer breaches her fiduciary duty; (3) the alleged aider and abettor has knowledge of this breach; and (4) the aider and abettor substantially assisted or encouraged the wrongdoing.  *eLandia Int'l, Inc. v. Ah Koy, 690* F. Supp. 2d 1317, 1331 (S.D. Fla. 2009); *Simi Mgmt. Corp. v. Bank of Am. Corp*., No. C-11-5573, 2012 U.S. Dist. LEXIS 77233, at *12-13 (N.D. Cal. June 4, 2012). Inaction by an alleged aider and abettor may constitute substantial assistance when he owes a fiduciary duty directly to the plaintiff. *Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC,* No. 8:21-cv-146, 2021 U.S. Dist. LEXIS 254879, at

---

[2] *See also Thorn v. Reliance Van Co.*, No. 84-1740, 1985 U.S. App. LEXIS 25929, at *6-7 (3d Cir. Dec. 6, 1985) (same); *In re Main, Inc. v. Blatstein*, No. 98-5947, 1999 U.S. Dist. LEXIS 9312, at *61-62 (E.D. Pa. June 23, 1999) (same); *Chelsea Industries, Inc. v. Gaffney,* 449 N.E.2d 320, 329 (Mass. 1983) (same); *In re LandAmerica Fin. Group, Inc.,* 470 B.R. 759, 805 (Bankr. E.D. Va. 2012) (same); *see also Hall Family Props. v. Gosnell Dev. Corp*., 916 P.2d 1098, 1103 (Ariz. Ct. App. 1995) ("Arizona law, which imposes liability on corporate officers and directors if they knowingly participate or acquiesce in corporate torts."); *Rogers v. American Can Co.,* 187 F. Supp. 532, 536 (D.N.J. 1960) (finding "some breach of fiduciary duty or mismanagement by officers or directors, since they have guided the corporation into activities which violate the law, or at the very least, have acquiesced in such conduct").

*16 (M.D. Fla. July 12, 2021); *Woodard v. Labrada*, No. EDCV 16-00189, 2017 U.S. Dist. LEXIS 124546, at *15 (C.D. Cal. July 31, 2017).

Here, there is no doubt that the SAC alleges that Peter Baronoff was the commander-in-chief. The other Defendants, including Grabish and Helland, were his senior lieutenants (not mere foot soldiers) who not only followed orders but also committed their own improper acts such as preparing false financial statements, preparing unrealistic budgets and projections submitted to lenders, and supporting projects that had no relation to the activities of Promise/Success and were losing money from the outset.

Grabish and Helland also contend that Plaintiff still relies only on their titles to establish they had the requisite authority, responsibility, and control. This again ignores the allegations of the SAC. Relying on the two Defendants' own statements on their public LinkedIn pages, the SAC alleges that Grabish and Helland did have the requisite authority, responsibility, and control to challenge and prevent the alleged wrongdoing set forth in the SAC. [SAC, ¶¶ 24, 26, 29-31, 119-127]. Indeed, as Grabish and Helland acknowledge, this Court found, in analyzing Plaintiff's Amended Complaint, that Plaintiff's prior pleading contained allegations that went beyond merely asserting Grabish and Helland's job titles. [ECF #253 at 10, 13; 5/10/23 Opinion at 30]. Plaintiff bolstered these allegations in the SAC so Grabish and Helland's arguments that the SAC is deficient in alleging their authority, responsibility, and control (or that Plaintiff now alleges they had "less authority") should be rejected.

Grabish and Helland next argue that they cannot be liable for breach of fiduciary duty because they lacked a vote. However, their voting power is immaterial. As Plaintiff alleges in the SAC, these Defendants actively participated in the misconduct and then sat silent while other misconduct took place. Grabish and Helland were involved in calculating the accounts

receivables, which were altered to paint a rosier financial picture for the Companies that actually existed.  They also actively took part in the scheme to present misleading financial information to Wells Fargo, Crowe, and the Boards.  [ECF #253 at 14; SAC, ¶¶ 209, 217, 219-23, 227-28, 231, 239, 240, 242, 244-51, 257-58, 265, 266, 293-95, 327, and 394].  While they claim that Plaintiff's allegations are not "unique" to them [ECF #253 at 14-15], they cite no authority that the allegations must be unique.  There is no requirement that allegations against a defendant in a multi-defendant action be unique, particularly where, as here, many of the Defendants engaged in the exact same misconduct and were part of the same cohort.

Plaintiff's allegations against Grabish and Helland go directly to their areas of responsibility and oversight, including preparation of accurate (in this case inaccurate) financial information for the Companies.  [ECF #253 at 15; SAC, ¶¶ 585-86].  Preparation of accurate financials and disclosing information to the Boards was not a "functionary role" as Grabish and Helland flippantly contend; they were critical jobs over which Grabish and Helland had authority and responsibility.  Moreover, the misstatement of the Companies' accounts receivable is one of the major allegations in the SAC.  Grabish and Helland, and the other Defendant officers and directors, were aware of the misstatements of the accounts receivable but did nothing to rectify them.  Grabish's claim that Plaintiff acknowledges that Grabish has a "superior orders" defense ("I was just following orders") is not true and is irrelevant where Grabish had the authority to prevent certain actions given his title, position, and actual responsibility and control.  Consequently, the SAC alleges sufficient facts to plead plausible fiduciary duty claims against Grabish and Helland related to areas in which they exercised management and control.

It appears as though Grabish and Helland believe the SAC should be analyzed under a more stringent particularity than that required under Fed. R. Civ. P. 8 and 10.  They argue that

Plaintiff was required to list in detail each and every financial report that was misstated, what the manipulations were, when they occurred, the damages they caused, and Defendants exact role. This level of specificity is not required in a complaint under the Rule 8 standard in order to plead plausible fiduciary duty claims. *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 2017 U.S. Dist. LEXIS 226633, *38 (S.D. Fla. June 26, 2017) (Rule 9(b) particularity requirement does not apply to fiduciary duty claims).

In short, Plaintiff's allegations demonstrate that Grabish and Helland were more than the innocent bystanders who knew nothing of the wrongdoing as they seek to paint themselves in their Motion.

**B.   The SAC Alleges Plausible Claims Against Grabish And Helland Regardless Of Whether The Boards Lacked A Majority Of Disinterested Directs At The Time Of The Alleged Misconduct**

In another attempt to avoid any liability for their breaches of fiduciary duty, Grabish and Helland cite to the SAC's allegations that the Companies lacked a majority of disinterested directors at the time the alleged wrongdoing occurred.  [ECF #253 at 17-19].  This argument should be rejected for the following independent reasons.

First, in support of this argument, Grabish and Helland do not cite a single case or even a secondary source standing for the proposition that company officers are shielded from liability when they observe and actively participate in financial and other wrongdoing.  As set forth above, this is not the law.

Second, Grabish and Helland play fast and loose with their dates of employment, suggesting they were not employed by the Companies when the alleged misconduct occurred. [ECF #252 at 17-18].  As alleged in the SAC, Grabish and Helland provided misleading information to the Boards and Wells while they were employed by the Companies and when they had authority and responsibility over financial reporting.  [SAC, ¶¶ 594-95, 628-29].

Third, Grabish and Helland's argument ignores that the alleged acts themselves were wrong regardless of the composition of the Boards, and that innocent third parties like Wells Fargo, relied on the misleading financial information.  If Grabish and Helland's argument were accepted, a company officer could alter a company's financial records, submit them to lenders, governmental regulators, shareholders, and other third parties, but could never breach their fiduciary duties if the composition of the Board was improper.  Company officers have fiduciary duties independent of those of the directors.

Fourth, Grabish and Helland also ignore that the PHG Board never consisted of only Baronoff.  To the extent the PHI and Success Boards were comprised of only Baronoff after April 2016, there were other non-conflicted individuals to whom Grabish and Helland could report, such as the PHG Board, outside counsel, or inside counsel other than Armstrong, as well as any applicable hospital regulating agencies. *See Martinez v. Spear Safer Cpas & Advisors*, 2007 U.S. Dist. LEXIS 110959, at *10 (S.D. Fla. June 26, 2007) ("Plaintiff has identified honest individuals within [the company] to whom Defendant could have reported the insiders' misconduct, in addition to the regulatory agencies to whom [defendant] was obligated to report such misconduct.").

## II.    THE SAC IS NOT A SHOTGUN PLEADING AND STATES PLAUSIBLE CLAIMS FOR RELIEF; PLAINTIFF FOLLOWED THE COURT'S INSTRUCTIONS ON REPLEADING

Essentially summarizing the arguments Defendants made in the Joint Motion (in which they join), Grabish and Helland argue that the SAC continues to be an impermissible shotgun for several reasons, each of which fails when specifically analyzed.  Plaintiff's Opposition to the Joint Motion rebuts these arguments at length and Plaintiff respectfully refers to and incorporates the arguments in his Opposition to the Joint Motion at pages 6-16 herein.

As to Grabish and Helland's specific points, they first argue that the SAC is a shotgun pleading because Plaintiff failed to break down his fiduciary duty claims against them into separate Counts. [ECF #253 at 19-20]. In the 5/10/23 Opinion, the Court found that the AC was also the third type of shotgun pleading because the causes of action were not separated into separate Counts and asserted substantially identical fiduciary duty claims against a myriad of Defendants. [5/10/23 Opinion at 24, 26-27]. Following repleading, the SAC's allegations adequately put Grabish and Helland on notice of the claims against them. First, each fiduciary duty Count is asserted only against a single individual Defendant. Second, Plaintiff cites in each Count to the laws of the jurisdiction each of Grabish and Helland is alleged to have violated. [SAC, Count VII, ¶¶ 582-83; Count IX, ¶¶ 617-18]. Third, the detailed wrongdoing committed by each Defendant that Plaintiff alleges constitutes a breach of fiduciary duty and loyalty is alleged in each Count and this wrongdoing is further broken down by subheadings in each count and indeed, throughout the SAC.

Grabish and Helland next argue that the SAC is a shotgun pleading because it contains vague, conclusory, and unparticularized allegations. [ECF #253 at 20-21]. Like Defendants in the Joint Motion, Grabish and Helland ignore nearly all of Plaintiff's revisions, which demonstrate that all of the Defendants, including Grabish and Helland, engaged in specific wrongdoing. Plaintiff already addressed and rebutted this argument at length in his Opposition to the Joint Motion. [Opposition to Joint Motion at 8-12]. As instructed by the Court in the 5/10/23 Opinion, Plaintiff corrected any such deficiencies in the SAC by: (1) revising existing allegations to include additional specificity and details and name specific individual Defendants, and (2) including dozens of new factual allegations detailing how each Defendant personally (and the Defendants together) participated in the alleged wrongdoing. [*See, e.g.,* SAC, ¶¶ 29-31,

76, 83-84, 112, 118, 121-27, 130-31, 134-38, 141-44, 149-51, 161, 164-65, 167-68, 178-79, 187, 188-94, 196-99, 201-08, 222-23, 226-27, 233-295, 300-303, 320-69, 374-81, 389, 394-96; Exhibit B to Joint Motion].   Plaintiff also included new factual allegations specifying each Defendant's authority and control over the Companies to address this Court's finding that the AC focused only on Defendants' job titles and not their actual responsibilities, authority, and control. [5/10/23 Opinion at 14; SAC, ¶¶ 12, 14, 15-26, 29-31, 119-127].

For instance, Plaintiff cites to numerous emails and other evidence in the SAC (as this Court had instructed Plaintiff to do) alleging that all of the Defendants had some role in reviewing the financial statements.   [SAC, ¶¶ 83, 146, 448, 477].   Plaintiff also alleges that all the Defendants (including Grabish and Helland) attended the combined Companies' Board meetings where Defendants, among other things, failed to observe corporate formalities and separateness and ignored blatant conflicts of interest.   [*Id.*, ¶¶ 119-38, 168, 208, 421-23, 452-56, 483-88, 510-13, 515-16, 539-41, 569-71, 603-06].   Indeed, even a cursory review of the SAC demonstrates that Helland and Grabish, like their co-Defendants, just ignore the SAC's allegations (new and revised/amended) as to each Defendant's specific role, the misconduct perpetrated, and their responsibilities, authority, and control.

Only by ignoring Plaintiff's revisions can Helland and Grabish argue that the SAC is the second type of shotgun pleading.   As instructed by the Court, the SAC is now replete with detailed and specific factual allegations as to the role they and the other Defendants played in the wrongdoing, Defendants' actual responsibilities, authority, and control over the Companies, and the documents and financial analysis supporting those allegations.   [SAC, Grabish - ¶¶ 25, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 236, 237, 238, 239, 240, 293, 294, 295, 321, 322, 325, 326, 327, 328, 329, 330, 585, 586; Helland - SAC, ¶¶ 26, 29-31, 190, 209, 217, 219-23,

13

227-28, 242, 246, 248-51, 257, 295, 394; Exhibit B to Opposition to Joint Motion].

Grabish and Helland further contend that Plaintiff's fiduciary duty claims are deficient because they are "functionally identical" to the fiduciary duty claims asserted against the other Defendants. This is because many of the same Defendants engaged in the exact same misconduct. [ECF #253 at 21]. As alleged in the SAC, Defendants did not act separately and did not differentiate amongst the various Companies. There were no separate Board meetings for the Companies, no separate minutes for Board meetings of each of the Companies, and the officer and director Defendants all attended the unified Board meetings. [SAC, ¶¶ 129-34]. Several of the Defendants had multiple roles but they made no effort to specify which hat they were wearing at any particular time.

Based on the Board meeting minutes for the Companies, the PHG, PHI, and Success Boards never conducted separate meetings, approved actions by the "Board" without specifying which Board approved such action, and approved management decisions without specifying in what capacity the Board members were voting or acting. [SAC, ¶ 29-31]. The minutes also give no indication what particular topics or issues were discussed and whether anyone voiced opposition to any issue raised for discussion. [*Id.*, ¶ 129]. Consequently, based on the way Defendants operated the Companies and conducted Board meetings, it is impossible at this stage for Plaintiff to include the level of particularity that Defendants demand, and which Plaintiff respectfully submits is not required at the pleadings stage under Fed. R. Civ. P. 8 or 10. Indeed, it is precisely this failure to differentiate between the various Companies and Defendants' respective capacities that undergirds some of Plaintiff's claims. [SAC, ¶¶ 421-23, 452-56, 483-88, 510-13, 539-41, 569-71, 603-06].

Plaintiff submits he has alleged sufficient facts to plead plausible fiduciary duty claims against Helland and Grabish under Rule 8. *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 2017 U.S. Dist. LEXIS 226633, *38 (S.D. Fla. June 26, 2017) (Rule 9(b) particularity requirement does not apply to fiduciary duty claims).

## III.   THE SAC ALLEGES PLAUSIBLE FIDUCIARY DUTY CLAIMS AGAINST HELLAND AND GRABISH UNDER CALIFORNIA LAW

Grabish and Helland acknowledge that, as the Court instructed, Plaintiff eliminated his claims against them under the California Revised Uniform Limited Liability Company Act ("RULLCA") in the SAC since they were not managers or members of Success, to Plaintiff's current knowledge.  [ECF #253 at 22-23].  Without citing any authority specifically addressing the issue, they nevertheless argue incorrectly that Plaintiff has no California common law fiduciary duty claims against them either since such claims are preempted by RULLCA.

RULLCA does not replace California common law with respect to fiduciary duties owed by officers to a California LLC and Grabish and Helland cite no California case law supporting the proposition that they, through their officer positions and operational control of Success, did not owe fiduciary duties to Success as a California LLC.  RULLCA governs the fiduciary duties of managers and members, not officers or directors.   Cal. Corp. Code § 17704.9.   Under California law, "[a] fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another[.]"  *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003).  "The business of corporate life could not go on if people could not trust those who are put into a position of trust for the express purpose of attending to details of management." *Calpop.com, Inc. v. Hoover*, 2013 Cal. Super. LEXIS 504, *51 (Cal. Sup. Ct. Oct. 3, 2013).

Fiduciary duties owed by officers are based on whether the officer exercised some discretionary authority over the LLC's activities.  *Id.* at *51-52.  Officers of an LLC who participate in management and exercise some discretionary authority are in a fiduciary relationship with the LLC and owe a duty of care and loyalty to the LLC.  *Id.* ("An officer who participates in corporate management by exercising some discretionary authority owes a fiduciary duty of loyalty to the corporation. This duty exists even where the officer's authority falls short of having control over the corporation.").

As set forth herein and in more detail in the SAC, Helland and Grabish exercised control over Promise/Success through their actions, duties, responsibilities, and authority.  [SAC, Grabish - ¶¶ 25, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 236, 237, 238, 239, 240, 293, 294, 295, 321, 322, 325, 326, 327, 328, 329, 330, 585, 586; Helland - SAC, ¶¶ 26, 29-31, 190, 209, 217, 219-23, 227-28, 242, 246, 248-51, 257, 295, 394; Exhibit B to Opposition to Joint Motion].  Grabish was Senior Vice President – Strategic Planning and Financial Analysis for PHI and Success during the relevant time period.  [SAC, ¶ 24].  In that position, he actually exercised executive control over operations at PHI and Success.  [*Id.*]  Indeed, according to his own LinkedIn page, he provided strategy, modeling, and budgeting for the Companies' facilities in additional to managing the accounts payable vendor base and negotiated payment plans.  [*Id.*].

Helland was Senior Vice President of PHI and Success and through those positions also actually exercised executive control over operations at PHI and Success.  His LinkedIn page states that he "lead all Capital market activities, industry M&A, Business Development and Investor Relations, across the integrated system platform . . . [and] [l]ead all activities of acquisition targets and dispositions of noncore assets, including negotiations, deal structures/financings and close."  See Exhibit B hereto.

The SAC's detailed factual allegations allege that Grabish and Helland engaged in individual wrongdoing, including, but not limited to, providing misleading financial information to Wells Fargo, the Companies' auditors, the Success Board, and vendors.  [SAC, ¶¶ 29-31, 76, 83-84, 112, 118, 121-27, 130-31, 134-38, 141-44, 149-51, 161, 164-65, 167-68, 178-79, 187, 188-94, 196-99, 201-08, 222-23, 226-27, 233-295, 300-303, 320-69, 374-81, 389, 394-96; Exhibit B to Joint Motion].  They also prepared and reviewed budgets and had control over the operations of Success.  [*Id.*]  Success and its subsidiaries reposed confidence in Grabish and Helland, as demonstrated by the level of control and authority they had over day to day operations of Success and Success's financial preparation and planning.  Grabish and Helland, as officers of Success and by virtue of their authority and responsibility to Success, thus owed fiduciary duties to Success.

## **CONCLUSION**

By reason of the foregoing, Plaintiff respectfully requests that the Court deny Grabish

and Helland's Motion to Dismiss in its entirety.

Dated:  September 22, 2023

SILLS CUMMIS & GROSS P.C.
*Attorneys for Plaintiff*

By:  */s/ David B. Newman*

  David B. Newman
  William R. Tellado
  101 Park Avenue, 28th Floor
  New York, New York 10178
  (212) 500-1532
  dnewman@sillscummis.com
  wtellado@sillscummis.com


BERGER SINGERMAN LLP
*Attorneys for Plaintiff*

By:  */s/ Paul S. Singerman*

  Paul S. Singerman
  1450 Brickell Avenue, Suite 1900
  Miami, Florida 33131
  (305) 714-4343
  singerman@bergersingerman.com

18

# EXHIBIT A

 

     


## Stan Grabish MBA CIRA • 3rd

Associate Director at RedRidge

 RedRidge

Atlanta, Georgia, United States · **Contact info**

**500+ connections**

Follow  [ Message ]  [ More ]

## About

Performs financial due diligence for corporate, private equity, investment banks, and lenders. Due diligence offerings include buy and sell-side due diligence, collateral analyses, valuation, forensic accounting, and restructuring.

...  ...see more

## Activity

3,594 followers

[ + Follow ]

Posts  [ Comments ]

Stan Grabish MBA CIRA posted this • 6mo

Matt Rasul is #hiring. Know anyone who might be interested?

 RedRidge Diligence Services - Analyst or Associate
Job by RedRidge
Chicago, Illinois, United States (Hybrid)

👁 2

Stan Grabish MBA CIRA posted this • 8mo

Matt Rasul of RedRidge is #hiring. Know anyone who might be interested?

...  ...show more

 RedRidge Diligence Services - Senior Associate or Associate Director
Job by RedRidge
Dallas, Texas, United States (Hybrid)

👁 3

Stan Grabish MBA CIRA posted this • 10mo

Matt Rasul is #hiring. Know anyone who might be interested?

 RedRidge Diligence Services - Senior Associate or Associate Director
Job by RedRidge
Dallas, Texas, United States (Hybrid)

👁 8

Show all posts →

## Experience



**Associate Director**
RedRidge · Full-time
Mar 2022 - Present · 1 yr 7 mos
Atlanta, Georgia, United States

Performs financial due diligence for corporate, private equity, investment
banks, and lenders. Due diligence offerings include buy and sell- ...see more

**Director**
ARG Transaction Services · Full-time
Jun 2021 - Mar 2022 · 10 mos
United States

ARG Transaction Services
* inventory appraisals, field exams, restructuring, refinancing, and ...see more

**Founder**
FinAdvisr.com · Full-time
Mar 2021 - Mar 2022 · 1 yr 1 mo
Atlanta, Georgia, United States

* Work with Companies to find both new financing and refinancing sources.
* Work with story credits and their respective bank groups to neg ...see more



**Managing Director**
Focus Management Group
Apr 2019 - Nov 2020 · 1 yr 8 mos
Greater Atlanta Area

* Work with underperforming Companies to improve their financial viability
* In 2020, led the successful $65 million loan refinancing to a cra ...see more



**SVP - Strategic Planning and Financial Analysis**
Promise Healthcare
May 2015 - Mar 2019 · 3 yrs 11 mos
Boca Raton, FL

• Provided strategy, modeling and budgeting for specialty post-acute care
health system with 14 Long Term Acute Care hospitals, two Short Term
Acute Care hospitals and two Skilled Nursing Facilities
• Executive sponsor of major software projects including Oracle ERP, LTRAX,
and Relay Clearance
• Co-created pricer tool to analyze reimbursement and cost levels at varying
patient lengths of stay
• Managed a stretched Accounts Payable vendor base, negotiated payment
plans, settlements and removal of credit holds
• Led efforts to reduce costs with medical transcription, multi-function
devices (copier / scanning / faxing) and record storage (together $0.6MM in
savings) amongst other initiatives
• As consultant to Company (prior to hire in 2015), dealt with settlement
issues required for emergence from five years of litigation between owners
and hedge fund investors

Show all 8 experiences →

## Education



**MIT Sloan School of Management**
Executive Education Course, Artificial Intelligence: Implications for Business
Strategy Program
2019

Activities and societies: What is artificial intelligence (AI)? What does it mean
for business? And how can your company take advantage of it?...


**Emory University - Goizueta Business School**
MBA, General Management
2000 - 2002


**Boston College**
BA, Economics
1992 - 1996

Show all 4 education →

## Licenses & certifications


**Predictive Analytics for Business**
Udacity
Issued Jan 2021

( Show credential ☐ )


**Introduction to R for Data Science**
Microsoft
Issued Dec 2019
Credential ID 6fcade8a4e96406cab0483bbfa8c4d44

( Show credential ☐ )


**Alteryx Core Certified**
Alteryx
Issued Mar 2019 · Expired Mar 2021
Credential ID Alteryx Core Certified

( Show credential ☐ )

Show all 4 licenses & certifications →

## Skills

**Banking**

 Endorsed by 4 colleagues at Focus Management Group

 40 endorsements

**Consulting**

 Endorsed by Ilan Berkner who is highly skilled at this

👥 9 endorsements

**Loans**

👤 Endorsed by Chris Coutu who is highly skilled at this

Endorsed by 4 colleagues at Focus Management Group

👥 27 endorsements

Show all 30 skills →

## Recommendations

Received    Given


**Ken Naglewski** · 3rd
Principal The 180 Consulting Group
September 14, 2013, Ken managed Stan directly

Stan worked with me on a number of consulting engagements over several years. He is a savvy, hard working man who understands how all business functions relate. He is a very affable guy that people relate to.

 **Cardamone Law,LLC** · 2nd
CEO/President at Cardamone Law, LLC, and MyLansdale Lawyers
July 18, 2010, Cardamone worked with Stan but they were at different companies

Stan is a dynamic thinker, well organized, and relentless with all tasks.

 **Mark Rinder, (inactive retired CPA)** · 3rd
Former Executive Vice President, Chief Operating Officer and Chief Financial Officer
March 30, 2007, Mark worked with Stan but they were at different companies

Stan worked elbow-to-elbow with the guys in my organization and with me in a difficult situation and did it with calm and confidence. I enjoyed working with him and would recommend him to others without reservation.

## Interests

Companies     Groups     Newsletters     Schools

 **Oracle**
9,398,182 followers


 **Accenture**
11,448,233 followers


Show all companies →

## Causes

Arts and Culture • Health • Science and Technology • Social Services

Ad  ···
David, make connections to boost the power of your network

 

See the full list of Who's Viewed Your Profile

Try now for $0

## People also viewed

 **Michael Gervais** 🔗 · 3rd
Partner/Owner
✈ Message

 **Shawn J. McBride** 🔗 · 3rd
Senior Vice President Commercial Banking | Consultant | Healthcare and Manufacturing Specialist | Strategic Partner | Board and Committee roles...



**Jeff Henry** [in] · 3rd

Managing Director, Commercial Banking

+ Follow

**Luke Graham** · 3rd

Proven senior business leader with successful track record in various roles within commercial finance, consumer finance and structured finance

+ Follow

**Charles Perer** · 2nd

Head of Originations at SG Credit Partners

1 mutual connection

Connect

Show more ˅

**People you may know**

From Stan's company

**Andrew Rodgers**

Associate Director at RedRidge Diligence Services

Connect

**Thomas McClay**

Managing Director at RedRidge Diligence Services

Connect

**Garrett Lanzoni, CPA**

Associate at RedRidge

Connect

**Scott Mitchell**

Managing Director at RedRidge Diligence Services

Connect

**Brian Garcia**

Director - RedRidge Diligence Services

Connect

Show more ˅

**You might like**

Pages for you

**The National Law Journal**

Writing and Editing

18,087 followers

3 connections follow this page

+ Follow

**Law360**

Online Audio and Video Media



118,118 followers

9 connections follow this page

+ Follow

Show more ∨

Promoted ...



**Attorney Needed ASAP**
We need attorneys to help our legal
clients. Free trial to view cases.  ⟩

**Find full time in no time**
Find your full-time fit on Upwork.  ⟩

**FT Energy Transition**
31 Oct - 2 Nov | Join the Energy
Transition Summit in-person or online  ⟩

# EXHIBIT B

              
Home  My Network  Jobs  Messaging  Notifications  Me ▾    For Business ▾    Try Premium $0



## **Steve Helland** · 3rd

Managing Partner | Cole Avenue Partners, LLC | Finalis Securities, LLC

- Cole Avenue Partners, LLC
-  The University of Texas at Austin - Red McCombs School of Business

Dallas, Texas, United States · Contact info

**500+** connections

Message   ( + Follow )   ( More )

---

## Verifications

**Government ID**
Steve has verified their government ID.

Show verifications →

## About

Extensive experience in three key areas: investment banking/capital markets, business development and proprietary deal sourcing, as a recognized leader in the financial services industry. Focusing primarily on Healthcare and Cannabis.

...                                                                ...see more

## Activity
1,118 followers

Posts   ( Comments )

Steve Helland reposted this • 1mo
    Too good not to share...

                        Thanks Lon......                        ...show more

🌐 3                                                        1 comment

Steve Helland reposted this • 5mo



👍🌐 28

Steve Helland reposted this • 7mo



### Cannabis Pitch Fest
eventbrite.com • 1 min read

 7

Show all posts →

## Experience

### Managing Partner
Cole Avenue Partners, LLC · Full-time
May 2014 - Present · 9 yrs 5 mos
Dallas, Texas

Cole Avenue Partners, based in Dallas, Texas is a full-service Investment
Banking & Advisory firm serving small to middle-market growth   ...see more

**Skills:** Distressed M&A · Healthcare · Healthcare Investment Banking ·
Cannabis · Healthcare Information Technology (HIT) · Healthcare.  ...see more

   Cole Avenue Partners, LLC

### Head of Capital Markets, M&A & BD
KPC Health | Cole Avenue Partners, LP · Full-time
Dec 2018 - May 2019 · 6 mos
Orange County, California Area

Lead all capital markets activities, including M&A and Business Development
across the integrated system platform. Lead all activities of acquisition...

### Operating Partner/Head BD & IR - Promise Healthcare Group, LLC
Promise Healthcare Group, LLC | Cole Avenue Partners, LP
Jun 2014 - Nov 2018 · 4 yrs 6 mos
Dallas, Texas / Boca Raton, FL

Lead all capital markets activities, including M&A, Business Development
and Investor Relations, across the integrated system platform. Lead all
activities of acquisition targets & disposition of noncore assets, including
negotiations, deal structures/financings and close.

### Founding Managing Partner
SSR Capital Partners, LP
May 2003 - Dec 2016 · 13 yrs 8 mos
Headquarted in Dallas

Co-Founder and Managing Principal of SSR Capital Partners, LP, a Hedge
Fund of Funds with a core allocation to private debt, asset-based lending...

### Executive Vice President - Head of Wealth Management
Scottish Re Group
2001 - 2003 · 2 yrs
Dallas, Cayman, Bermuda

Show all 8 experiences →

## Education

   **Texas McCombs School of Business**
BBA, Finance, Accounting

## Licenses & certifications

### Steve Helland is a Registered Representative of Finalis Securities LLC Member FINRA/SIPC.
Finalis Securities LLC Member FINRA/SIPC.

Issued Mar 2022

 **Series 63**
FINRA

 **Series 7**
FINRA

Show all 4 licenses & certifications →

## Skills

**Distressed M&A**

Managing Partner at Cole Avenue Partners, LLC

**Healthcare**

Managing Partner at Cole Avenue Partners, LLC

**Healthcare Investment Banking**

Managing Partner at Cole Avenue Partners, LLC

Show all 47 skills →

## Recommendations

Received    Given

**Nothing to see for now**
Recommendations that Steve receives will appear here.

## Organizations

**McCombs School of Business, Master of Science in Finance**
Advisory Board · Jun 2013 - Jun 2016

Associated with SSR Capital Partners, LP

The Texas Master of Science in Finance (MSF) Program at the McCombs School of Business provides a unique opportunity for students to receive graduate-level...

## Interests

Top Voices    Companies    Groups    Newsletters    Schools

 **Karen S. Lynch** 🔗 · 3rd
President and Chief Executive Officer at CVS Health
266,618 followers

⟳ + Follow

 **Jim Farley** 🔗 · 3rd
CEO at Ford Motor Company
216,339 followers

+ Follow

Show all Top Voices →

## Causes

Health





**Mara Davis**
--

🔗+ Connect

Show more ⌄

**in** L E A R N I N G

Add new skills with these courses, free for 24 hours

 Mindsets and Strategies for Negotiation Success

 Skills for Your First 90 Days as a New Manager

 AutoCAD 2023 Essential Training

See my recommendations


Promoted                                              ⋯

Attorney Needed ASAP
We need attorneys to help our legal
clients. Free trial to view cases.                     ❯

Enhance Mobile Security!
Access the best Mobile and Connected
TV (CTV) app and SDK intelligence now!                 ❯

FT Due Diligence | 17 Oct
Digital & In-Person Event | Explore The
Dealmaking Landscape | Register Now                    ❯