UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-21543-JG

ROBERT MICHAELSON OF ADVISORY
TRUST GROUP, LLC, in his capacity as
Debtor Representative and Liquidating Trustee,

      Plaintiff,

v.

PETER BARONOFF, KEITH REUBEN,
BRIAN DUNN, DAVID ARMSTRONG,
JAMES HOPWOOD, RICHARD GOLD,
BRYAN DAY, STAN GRABISH,
RICHARD COHEN, STEVEN HELLAND,
MALINDA BARONOFF, SHANNA
BARONOFF, and JOHN DOES 1-100,

      Defendants.

**DEFENDANTS' RULE 37 MOTION FOR SANCTIONS AGAINST
PLAINTIFF FOR HIS PERVASIVE DISCOVERY VIOLATIONS**

## INTRODUCTION

Defendants Peter Baronoff, Keith Reuben, Brian Dunn, David Armstrong, James Hopwood, Richard Gold, Bryan Day, Stan Grabish, Steven Helland, Malinda Baronoff and Shanna Baronoff (collectively the "Defendants"), pursuant to Federal Rule of Civil Procedure 37 and the Court's Post-Discovery Hearing Administrative Order (the "Post-Hearing Order," ECF 318), seek sanctions against Plaintiff based on his abuse of the discovery process, including, but not limited to, Plaintiff's decision to wait until February 1, 2024 to produce a significant batch of documents that his counsel, David Newman, obtained on January 2, 2024 and utilized extensively at the depositions of Defendants David Armstrong and James Hopwood on January 19 and 25, 2024. These documents were created by attorneys at the law firm of Waller Landsen Dortch & Davis LLP ("Waller") who were retained by the Restructuring Committee of PHG's Board to conduct an internal investigation. The subject Waller documents (hereafter the "Investigation Documents") include notes that purport to memorialize Waller's interviews of Defendants Armstrong and Hopwood and non-party Suzanne Sterling, and which pertain to issues and allegations that are directly at issue in this case.

The Investigation Documents ought to have been gathered and disclosed at the outset of this case as part of Plaintiff's Rule 26(a) initial disclosures.  The Investigation Documents are also responsive to Requests for Production issued to Plaintiff in 2022 and 2023 and should have been produced or listed on a privilege log at that time. At a minimum, Plaintiff had a duty to produce the Investigation Documents promptly (*i.e.*, long before Plaintiff used them at Defendants' depositions) pursuant to Federal Rule of Civil Procedure 26(e). Rather than doing so, Mr. Newman deliberately withheld the Investigation Documents until after he had conducted the Armstrong and

Hopwood depositions – for which he had planned extensive lines of examination based directly on the contents of the withheld documents.

This Court's Post-Hearing Order directed Mr. Newman to file an affidavit: 1) identifying how, when and from whom he received the Investigation Documents; and 2) explaining why they "were not previously listed on a privilege log and why Plaintiff's counsel did not previously advise defense counsel of the documents' existence." ECF 318 at pg. 1-2. Although Mr. Newman's affidavit (ECF 320, the "Affidavit") addresses how the Investigation Documents purportedly came into his possession, he fails to provide *any* cogent explanation or excuse for his failure to promptly produce them to the Defendants. Instead, he merely states that he conducted a privilege and waiver analysis and after "concluding" this analysis (on an unspecified date) had a discussion with his client (again, no date is given) before producing the Investigation Documents to the Defendants. *See* Aff. ¶ 15. Mr. Newman's representations do not explain his thirty (30) day delay in producing the Investigation Documents to the Defendants, it does not address his decision to withhold the Investigation Documents even after he had decided to use them at the depositions of Defendants Armstrong and Hopwood, and it fails to acknowledge his refusal to admit he was in possession of the Investigation Documents when he was directly asked whether he had the documents at Armstrong's January 19 deposition, and in subsequent emails preceding and following Hopwood's deposition.

For the reasons discussed herein, Defendants respectfully submit that Plaintiff and Mr. Newman's conduct with respect to the Investigation Documents constituted a deliberate ambush tactic and an abuse of the discovery process. Accordingly, Defendants request that this Court enter appropriate sanctions against Plaintiff based on this bad faith conduct and Plaintiff's violations of the Federal Rules of Civil Procedure.

## BACKGROUND AND FACTS

**a.  Defendants Sought the Investigation Documents Through Party Discovery**

Defendants made appropriate efforts to obtain the Investigation Documents through document requests issued to Plaintiff and a subpoena issued to Waller. On September 7, 2022, the Baronoff Defendants issued a Second Request for Production to Plaintiff seeking "[a]ll notes of, memorandum memorializing, and transcripts of any other witness interviews or statements."[1] *See* Ex. 1, RFP No. 2. On June 9, 2023, the Baronoff Defendants issued a Third Request for Production to Plaintiff which sought "[a]ll drafts and final versions of any internal investigation report prepared by, on behalf of, or at the request of Promise relating to the allegations raised against Peter, Malinda, or Shanna in this case." *See* Ex. 2, RFP No. 1. The Investigation Documents were clearly responsive to these requests (and were likely responsive to other document requests issued in this case as well). Plaintiff also had an independent duty to produce these documents pursuant to Rule 26(a) and/or Rule 26(e) of the Federal Rules of Civil Procedure.

Mr. Newman swears that he did not obtain the Investigation Documents until January 2, 2024 – *i.e.*, after he had responded to the discovery requests at issue. *See* Aff. ¶ 3. However, his Affidavit is silent as to why he never supplemented his discovery responses once he received the Investigation Documents, and establishes that Mr. Newman made no effort to obtain the Investigation Documents until it served his purposes. His Affidavit merely asserts that unidentified persons sought Waller's interview notes as part of Plaintiff's diligence prior to bringing this lawsuit, and were told either that the notes did not exist or that they could not be found. *Id.* at ¶ 6 ("When diligence was conducted in connection with the commencement of this litigation, I am

---

[1] Although the RFPs were issued by the Baronoff Defendants, all Defendants received Plaintiff's responses and production, and the other Defendants tailored their own discovery requests in reliance on the fact that they would receive the benefit of discovery issued by the Baronoffs.

informed (as I was not assigned to the case at the time) interview notes were requested and Waller responded either that there were no notes or that the notes could not be found"). This exceedingly vague statement does not demonstrate that Plaintiff made appropriate efforts to obtain the interview notes – and Mr. Newman obviously did not accept Waller's vague suggestion that the investigation notes did not exist, as he testified that he spoke to Waller's counsel in preparation for a deposition noticed by the Defendants and requested that Waller conduct another search for the notes. *Id.* at ¶ 7. This resulted in Waller promptly locating the Investigation Documents and producing them to Plaintiff. *Id.* The clear import of Mr. Newman's statements is that he *did not* seek out the Investigation Documents in connection with Plaintiff's initial Rule 26 disclosures or the Defendants' discovery requests – even though these documents were in Plaintiff's control,[2] if not his actual possession.[3]

b. **Defendants' Efforts to Obtain the Investigation Documents Through Non-Party Discovery Were Frustrated by Plaintiff's Failure to Comply with The Court's Discovery Orders**

---

[2] Plaintiff's control over the Waller documents is a product of the purported attorney-client relationship between Waller and Plaintiff and their close cooperation in this case. A subcommittee of the Promise board retained Waller to conduct the internal investigation, and Plaintiff contends that he is the holder of the privilege pertaining to that representation. Additionally, Waller (which merged with Holland and Knight a year ago) was debtor's counsel in the Promise Chapter XI proceeding and is currently representing Plaintiff in an Adversary Proceeding filed in the United States Bankruptcy Court for the District of Delaware, Case No. 20-50769-CTG. Mark Taylor (a former partner at Waller, who became a partner at Holland & Knight) is counsel of record for Plaintiff in the Adversary Proceeding. Mr. Taylor represented Waller in connection with Defendants' subpoena to Waller in this case. Mr. Taylor also sought to appear at the deposition of John Tishler (a former partner at Waller who oversaw the investigation). When Defendants requested Mr. Taylor leave the deposition – since he did not represent Mr. Tishler, and he advised that he would be representing one or more former Waller attorneys whose depositions were scheduled for later that week – Mr. Newman asserted that Mr. Taylor should be allowed to stay, noting that "[he] could walk out of this deposition and tell Mr. Taylor whatever happened." *See* Ex. 3, Tishler Dep. 10:18-19. When Defendants insisted that Mr. Taylor leave the deposition, Mr. Newman told Mr. Taylor "we'll speak later." *Id.* 12:20. Additionally, at Mr. Newman's behest, Mr. Tishler's attorney refused to allow Mr. Tishler to testify regarding the substance of the discussions he had with Mr. Newman in preparation for his deposition, citing the common interest doctrine. *Id.* 17:13-20:18.

[3] Plaintiff's privilege log reflects that Ms. Brennan, who was formerly an attorney at Mr. Newman's firm, interviewed Tishler and Haubenreich in 2020 (prior to the commencement of this lawsuit). It seems likely that Ms. Brennan would have obtained the Investigation Documents in connection with those interviews. At a minimum, the interviews would have put Plaintiff on notice that the Waller notes existed and should have prompted Plaintiff to obtain them.

In addition to seeking the Investigation Documents directly from the Plaintiff – who clearly had access to them, as evidenced by his admission that he was able to obtain them by simply calling Waller's counsel – Defendants subpoenaed Waller in an effort to obtain documents pertaining to the investigation. This process involved significant negotiations with Waller's counsel over the scope of the documents requested, the search terms used to gather documents, and cost allocation. Once an agreement on these points was finally reached, Waller was required to produce documents responsive to Defendants' subpoena to Plaintiff's counsel, pursuant to the Stipulation and Order Regarding Production of Documents by Non-Parties (ECF 152, the "Order on Non-Party Production"), so that Plaintiff could conduct a privilege review. Pursuant to the Order on Non-Party Production, Plaintiff was required to promptly notify Defendants upon receipt of the Waller documents, begin producing the documents to Defendants no later than 14 days after receipt, complete the production within 21 days business days of receipt, and produce a privilege log within 7 days of the final production of documents. But Plaintiff's material non-compliance with these requirements (discussed below) significantly delayed Defendants' receipt and analysis of the Waller production, preventing Defendants from learning sooner that the anticipated investigation notes and memorandum had not been produced.

According to Mr. Newman's Affidavit, he received Waller's production on August 21, 2023, but failed to recognize or open the transmittal email. *See* Aff. ¶ 9. Mr. Newman states that, once he learned Waller had produced documents to him (he does not specify the date of this discovery), attorneys at his firm accessed Waller's production and began their review on or about September 21, 2023. *Id*. ¶ 10. Rather than promptly notifying Defendants of these developments, Mr. Newman waited until October 4, 2023 to notify Defendants that he had "recently learned" that

Waller had previously sent him the documents, and advised that he anticipated being able to give Defendants an estimate of when he would begin producing documents in six days. *See* Ex. 4.

Plaintiff's counsel produced a first tranche of Waller documents to Defendants on October 13, 2023, and additional tranches on October 16 and 18, 2023. On November 17, 2023, Ms. Fotiu-Wojtowicz (counsel for the Baronoffs) sent an email requesting an update on when Plaintiff would complete the production and provide a privilege log. *See* Ex. 5. Plaintiff's counsel did not respond to this inquiry, but instead produced an additional tranche of documents on November 21, 2023. *See* Ex. 6. On that same date, Ms. Fotiu-Wojtowicz again requested an update on the production, noting that Plaintiff was "well outside the timeframe agreed upon for review of third-party production." *Id.* On December 1, 2023, Mr. Newman proposed a privilege stipulation that would allow Plaintiff to produce "substantially all" of the Waller documents and seek a claw back at a later date. *See* Ex. 7. Faced with the prospect of further delays and disputes – in the context of an expansive lawsuit that has been replete with both, and with fact discovery soon closing – Defendants accepted the proposed stipulation. However, negotiation and drafting took weeks, and the stipulation ultimately was not approved and fully executed until January 16, 2024. *See* Ex. 8. Upon execution, Plaintiff produced the remainder of Waller's production (12,654 documents in total) to the Defendants. Although, by that time, Mr. Newman had been in possession of the Investigation Documents for **two weeks**, he neither provided them nor disclosed their existence.

These facts demonstrate Plaintiff's clear disregard of his obligations under the Order on Non-Party Production. Given Mr. Newman's receipt of the Waller documents on August 21, 2023, Plaintiff had an obligation to complete his production by September 26 and provide a privilege log by October 3 – yet Plaintiff did not even advise Defendants that he had received the Waller documents until October 13.  Even if we were to treat the date Plaintiff's counsel began reviewing

the documents (September 21, 2023) as the date they were received by Plaintiff, it is clear that Plaintiff violated the Order on Non-Party Production. Plaintiff was obligated to notify Defendants promptly of receipt and begin producing documents within 14 days – yet he waited 13 days from the date review began to advise Defendants he had the Waller documents, and he waited 22 days from that date to produce any documents at all. Even using September 21, 2023 as the start date, Plaintiff should have completed his production by October 26 and provided a privilege log by November 2. Plaintiff utterly disregarded those deadlines.[4]

### c. Plaintiff Intentionally Withheld the Investigation Documents Until After He Had Used Them at Armstrong and Hopwood's Depositions

Mr. Newman's Affidavit asserts that he learned Waller had the Investigation Documents sometime in December of 2023 and received them from Waller on January 2, 2024 – yet he waited until February 1, 2024 to produce them to Defendants. Aff. ¶¶ 7, 15. Mr. Newman also concedes that he used the Investigation Documents to elicit testimony from Armstrong and Hopwood *before* producing them to Defendants, and he provides no legitimate justification for his decision to delay the production or his failure to list them on a privilege log. *Id.* ¶ 8. Accordingly, the Affidavit, taken at face value, establishes that Mr. Newman improperly withheld the Investigation Documents from the Defendants for at least thirty (30) days (at a critical juncture in the case in which there was less than sixty (60) days remaining in the discovery period and Defendants' depositions were commencing).

---

[4] Plaintiff's disregard of his obligations under the Order on Non-Party Production has not been limited to the Waller documents – he has consistently failed to notify Defendants of his receipt of production from third parties and failed to complete his privilege review and production in a timely manner. As just one example, Plaintiff's counsel *never* advised Defendants of his receipt of documents from FTI and New York Life Investment Management Holdings LLC, and Plaintiff held on to those documents for months without completing his review and production. On September 13, 2023, Noah Snyder (counsel for Armstrong, Day, Dunn and Gold) sent Plaintiff's counsel an email identifying these deficiencies and requesting Plaintiff produce the documents by September 22, 2023. *See* Ex. 9. When Plaintiff's counsel failed to acknowledge the email or complete the production, Mr. Snyder sent another email seeking to schedule a discovery hearing – which Plaintiff also ignored. *Id.* Plaintiff ultimately produced the remaining documents on September 28 under threat of a discovery hearing. *See* Ex. 10.

During the January 19, 2024 deposition of Armstrong, it became apparent that Plaintiff was in possession of documents pertaining to the Armstrong interview (which Defendants had not seen), as Mr. Newman spent considerable time positing fact specific questions about what Mr. Armstrong purportedly did or did not say to the Waller attorneys while conspicuously holding a document in his hand. Towards the end of the deposition, counsel for the Baronoffs asked Mr. Newman directly whether he was in possession of a memorandum of Waller's interview of Armstrong. Mr. Newman refused to disclose that he was:

> MR. BRODSKY:· I would just ask, and, David, I respect your right to say you don't want to reveal it, but you were spending quite a bit of time reading from what appeared to be a memorandum from Waller, of the interview of the witness which I don't have and haven't seen.· It might have been produced.· Are you willing to disclose to us what it is?· That is going to impact the position I'm going to take on the cross examination of the witness.
>
> MR. NEWMAN:· Well, you don't know what I was looking at, first, and if you have questions, you should ask questions and if there are other issues we take up after, that's fine and dandy, but it's your time to ask questions and if you want to, fine, if you don't, that's fine.

See Ex. 11, Armstrong Dep. 226:27-227:14.

On January 24, 2024 – the day before Hopwood's deposition – Ms. Fotiu-Wojtowicz sent Mr. Newman an email inquiring whether any Waller documents had been withheld based on privilege. See Ex. 12. Mr. Newman provided no response. On January 25, 2024, Mr. Newman conducted the deposition of Hopwood, and once again used the undisclosed Investigation Documents to guide his examination. The next day, January 26, 2024, Ms. Fotiu-Wojtowicz sent Mr. Newman a follow-up email reiterating her request for confirmation that Plaintiff had not withheld any Waller documents. Id. About an hour later, Mr. Newman responded that he had "produced everything Waller produced to us for review pursuant to your subpoena." Id. Ms. Fotiu-Wojtowicz immediately responded to inquire whether Mr. Newman was in possession of other

Waller documents that *had not* been produced pursuant to the subpoena. *Id.* ("Just to be clear, did you receive other Waller documents that weren't produced to you for review pursuant to our subpoena? Your e-mail below seems to be carefully worded, so I want to be sure I'm not missing anything?"). Mr. Newman then broke off communications for four (4) days!

On January 30, 2024, at approximately 2:05 p.m. EST, Plaintiff filed his Second Amended and Supplemental Initial Disclosures pursuant to Rule 26(a)(1). *See* ECF 313. Inexplicably, even then, Plaintiff did not reveal the existence of the Investigation Documents in those disclosures. About two hours later, Mr. Newman sent a response to Ms. Fotiu-Wojtowicz's email from four days ago in which he finally acknowledged Plaintiff was in possession of additional Waller documents. *See* Ex. 12. In that same email, Mr. Newman tried to extract an agreement that the additional Waller documents be produced pursuant to the parties' stipulation governing documents produced pursuant to Defendants' Waller subpoena. *Id.* When Defendants declined to extend the terms of the stipulation to the new Waller documents of unspecified provenance, Plaintiff produced the Investigation Documents anyway on February 1, 2024. *See* Ex. 13.

Plaintiff's production came *after* the depositions of Armstrong, Hopwood and Sterling (whose interviews are purportedly memorialized in the Investigation Documents), less than a day before the deposition of Keith Reuben (who was on the Restructuring Subcommittee that engaged Waller), a few days before the scheduled depositions of the four Waller attorneys who were involved with the investigation,[5] and twenty-nine (29) days before the March 1 discovery cutoff date.

---

[5] John Tishler, John Haubenreich, Stan Graham and Taylor Askew, whose depositions were scheduled for Feb.5-8.

### d.  Defendants Were Prejudiced by the Late Disclosure of the Investigation Documents

At the February 2, 2024 emergency discovery hearing, Plaintiff's counsel suggested Defendants could not claim surprise over Plaintiff's late production of the improperly withheld Investigation Documents because Defendants were aware that the Waller investigation had occurred. The Court instructed Defendants to address this point, and ordered Armstrong and Hopwood to state whether they remembered being interviewed by Waller. ECF 318 at pg. 3.

In response to the Court's directives, Messrs. Armstrong and Hopwood acknowledge that they recalled having meetings and discussions with the Waller attorneys. Generally speaking, counsel for the Defendants were aware or suspected that one or more investigations had occurred, they assumed that there would be notes, memorandum and/or other documentation of such investigations, and they endeavored to obtain these materials both through party and non-party discovery.

Defendants do not contend that they were prejudiced because they were unaware the investigation had occurred until Plaintiff produced the Investigation Documents – they were prejudiced by Plaintiff's late disclosure of the Investigation Documents. These documents ought to have been produced at the outset of this case, as they pertain to an internal investigation conducted on behalf of a board subcommittee pertaining to matters directly at issue. Because Defendants were deprived of these documents until February 1, 2024 (one month before the discovery cutoff), they had no meaningful opportunity to analyze and utilize them in the course of this litigation. Of particular significance, Defendants were denied use of the Investigation Documents at the November 8, 2023 deposition of Mike Keller (a PHG Director who was a member of the Restructuring Subcommittee and was intimately involved in the investigation) and the January 9, 2024 deposition of Suzanne Sterling (a former officer at Promise who was

interviewed by Waller). Because Mr. Keller and Ms. Sterling are both non-party witnesses who do not reside in Florida and cannot be compelled to appear at trial, their depositions constituted Defendants' one chance to obtain their testimony on these issues.

Moreover, Defendants were also severely prejudiced by Mr. Newman's improper use of the withheld Investigation Documents to interrogate Messrs. Armstrong and Hopwood at their depositions. The Investigation Documents include notes which purport to memorialize (and in some instance quote) statements Messrs. Armstrong and Hopwood allegedly made during their interviews in 2017 and/or 2018. Had Plaintiff timely produced the Investigation Documents, counsel for Armstrong and Hopwood would have discussed them with their respective clients and used them to prepare for their depositions, and Armstrong and Hopwood would have reviewed the notes in an effort to refresh their recollections of the interviews – *which were conducted more than six (6) years ago* during a very hectic period at the Companies. Instead, Plaintiff's counsel chose to hold the Investigation Documents back in an attempt to set an ambush. Indeed, Mr. Newman asserted in his Affidavit that "Messrs. Hopwood and Armstrong may have already perjured themselves as the [*sic*] deposition testimony appears to be directly inconsistent to the notes at issue." Aff. ¶18. While Defendants strenuously deny Mr. Newman's characterization of Hopwood and Armstrong's testimony,[6] his statement lends further support to the obvious

---

[6] Defendants likewise dispute that the Investigation Documents are accurate or admissible. Indeed, it strongly appears that the interview notes constitute hearsay and are otherwise lacking in indicia of reliability. The notes are of unknown provenance and were provided to Mr. Newman outside the ordinary channels of discovery by Taylor Askew – a former Waller attorney who had some involvement with the investigation, but *did not* participate in the interviews or take the notes. Aff. ¶ 4. The depositions of the four Waller attorneys who were involved in the investigation (Tishler, Haubenreich, Graham and Askew) were noticed by Mr. Newman, and were scheduled to take place in Nashville, TN on February 5-8. At the February 2 emergency hearing before this Court, Mr. Newman represented that the Defendants would be able to ask the Waller attorneys "anything they want about the notes." Ex. 14, Tr. 17:15. On February 6, immediately following Haubenreich's deposition, Mr. Newman filed has Affidavit, which identified Askew as the person who had provided the Investigation Documents to Mr. Newman. A few hours later, Mr. Newman unilaterally cancelled the depositions of Graham (the author of the notes) and Askew without explanation, and without consulting counsel for the Defendants – who were already in Nashville and were prepared to go forward. *See* Ex. 15. Accordingly, Defendants were deprived of the opportunity to ask meaningful questions about the notes, how they came to be produced to Mr. Newman, and why they were not located in response to Defendants' subpoena.

conclusion that he intentionally withheld the Investigation Documents to gain a tactical advantage at the depositions. Apparently, he was trying to create a perjury trap.

## MEMORANDUM OF LAW

### a. Legal Standard

Federal Rule of Civil Procedure 37 provides sanctions for non-compliance with a party's discovery obligations or the court's discovery orders. *See* Fed. R. Civ. P. 37. "Rule 37(b)(2) provides a range of sanctions that a district court may impose upon parties and their attorneys for failure to comply with the court's discovery orders." *Stuart I. Levin & Assocs., P.A. v. Rogers*, 156 F.3d 1135, 1140 (11th Cir. 1998). This includes "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." *See* Fed. R. Civ. P. 37(b)(2)(A)(ii). The rule also provides that, instead of or in addition to the enumerated sanctions, "the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(b)(2)(C) (emphasis supplied).

Rule 37(c)(1) provides for sanctions based on a party's failure to comply with its obligation to make appropriate Rule 26(a) disclosures, or the party's failure to supplement or correct its Rule 26(a) disclosures or responses to party discovery pursuant to Rule 26(e):

> If a party fails to provide information or identify a witness as required by <u>Rule 26(a)</u> or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and

> (C) may impose other appropriate sanctions, including any of the orders listed
> in Rule 37(b)(2)(A)(i)—(vi).

*See* Fed. R. Civ. P. 37(c)(1)

"The burden of establishing that a failure to disclose was substantially justified or harmless [pursuant to Rule 37] rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.,* 233 F.R.D. 687, 697 (N.D.Ga.2006)). "When determining whether a failure was substantially justified or harmless, reviewing courts consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Bielawski v. Davis Roberts Boeller & Rife, P.A.*, No. 218CV758FTM29MRM, 2020 WL 2473397, at *3 (M.D. Fla. May 13, 2020) (citing *Lips v. City of Hollywood*, 350 Fed. App'x 328, 340 (11th Cir. 2009) (internal quotations omitted)); *see also Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (A party's discovery conduct is "substantially justified" only when it is a response to a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action") (citing *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)); *Bielawski*, 2020 WL 2473397 at *3 ("A harmless failure to disclose exists when there is no prejudice to the party entitled to receive discovery") (citations omitted).

"Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982). The Rule imbues district courts with broad discretion. *Pharma Funding, LLC v. FLTX Holdings, LLC*, No. 20-21103-CIV, 2020 WL 8084174, at *2 (S.D. Fla. Dec. 28, 2020), *report and recommendation adopted*, No. 20-21103-CIV, 2021 WL 107137 (S.D. Fla. Jan. 12, 2021) ("Rule 37 gives district courts broad discretion to fashion appropriate sanctions for the violation of court orders"); *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1326 (11th Cir.

2004) ("district court has broad discretion to control discovery, including the choice whether or not to impose Rule 37 sanctions") (citations omitted); *Bielawski*, 2020 WL 2473397 at *3 ("A district court has broad discretion in determining whether a party's failure to disclose discovery materials is either substantially justified or harmless under Rule 37(c)(1)").

### b. <u>Legal Argument</u>

The Defendants seek sanctions against Plaintiff on three separate grounds. First, Plaintiff should be sanctioned under Rule 37(c)(1) for his failure to obtain and produce the Investigation Documents as part of their Rule 26(a) disclosures and/or in response to the Baronoff Defendants' Requests for Production issued on September 7, 2022 and June 9, 2023, respectively. As set forth above, Mr. Newman testified that – before he was assigned to this case – *someone* talked to Waller on Plaintiff's behalf, requested Waller's interview notes, and was told "either that there were no notes or that the notes could not be found." Aff. ¶ 6. The Affidavit is silent as to what efforts Plaintiff and his counsel made (or did not make) to obtain and produce these documents as part of their discovery obligations in this case. However, the Affidavit clearly establishes that – once Mr. Newman decided he wanted these documents for his own purposes in December of 2023 – they were quickly located and readily produced **to Plaintiff and his counsel only** without the need for a subpoena or other formal discovery. *Id*. ¶ 7.  Accordingly, the evidence establishes that Plaintiff and Mr. Newman were in control of these documents and always had the ability to obtain them, yet they failed to exercise reasonable diligence to obtain and produce them in accordance with their Rule 26(a) obligations and/or in response to Defendants' requests for production.

Second, Plaintiff should be sanctioned pursuant to Rule 37(b)(2) for their clear violations of the Court's Order on Non-Party Production. The Defendants subpoenaed Waller for documents in 2022, and Waller produced documents responsive to the subpoena to Mr. Newman on August

21, 2023. Aff. ¶ 9. Notwithstanding, Plaintiff and his counsel showed an utter disregard for their obligations under the Order on Non-Party Production and did not complete production of the Waller documents until January 16, 2024 (about 5 months after they were received). Even if the Court used September 21, 2023 (the date Plaintiff's counsel purportedly started reviewing the Waller documents) as the starting point for Plaintiff's duties under the Order on Non-Party Production, Mr. Newman has admitted that he did not promptly notify Defendants the production was received (Defendants were not told until Oct. 4, 2024), and he did not come remotely close to complying with the deadlines to start and complete the production (full production would have been due by October 26, 2024 with a privilege log due a week later).

Finally, and most egregiously, Plaintiff should be sanctioned under Rule 37(c)(1) for *deliberately* withholding the Investigation Documents from the Defendants for thirty (30) days. Mr. Newman concedes that he had the Investigation Documents in his possession by January 2, 2024, but failed to produce them to Defendants until February 1, 2024. Aff. ¶¶ 7, 15.[7] Mr. Newman also concedes that – during the period he was withholding the Investigation Documents – he chose to use them "in connection with" the depositions of Armstrong and Hopwood. *Id*. ¶ 9.[8] Mr. Newman did not acknowledge his refusal to admit he was in possession of the Investigation Documents when asked directly (and on the record) at Mr. Armstrong's deposition, or that he later avoided disclosure in response to Ms. Fotiu-Wojtowicz email by providing an evasive and carefully worded response, and then refusing to respond to Ms. Fotiu-Wojtowicz's follow-up email

---

[7] Mr. Newman's Affidavit states that the documents were produced on February 2, 2024. This appears to have been an error, as the documents were transmitted via email on February 1, 2024. *See* Ex. 13

[8] Mr. Newman neglects to mention that he also conducted the deposition of Suzanne Sterling (whose interview is purportedly memorialized in the Investigation Documents) on January 9, 2024. At the February 2 emergency hearing, Mr. Newman stated that he did not use the Investigation Documents at Ms. Sterling's deposition. *See* Ex. 14, Tr. 17:2-3. This misses the point that Defendants were deprived of the opportunity to question Ms. Sterling about these documents as a result of Plaintiff's discovery violations.

for another four-days. Given these facts, and Mr. Newman's failure to proffer any legitimate justification for the untimely production, stern sanctions are appropriate.

Defendants submit that Plaintiff 's violations of his discovery obligations and the Court's Order on Non-Party Production warrant the following sanctions: 1) exclusion of the Investigation Documents from evidence; 2) exclusion of Messrs. Armstrong and Hopwood's deposition testimony pertaining to what they did or did not say during the interviews conducted by the Waller attorneys; 3) exclusion of any other witness testimony pertaining to the Investigation Documents; and 4) requiring Plaintiff to pay reasonable expenses and attorneys' fees caused by their violations, including, without limitation, all expenses and attorneys' fees incurred in connection with this motion. The sanctions requested are specifically contemplated in Rule 37 and are within this Court's sound discretion.

*Trowery v. O'Shea* provides a good factual parallel and is instructive in this case. No. 12-6473, 2015 WL 9587608 (D.N.J. Dec. 30, 2015).  In *Trowery*, the Plaintiff filed a personal injury suit against Zimmer, the manufacturer of a cervical plate that was implanted in Plaintiff's spine during a cervical fusion surgery, and O'Shea, the doctor who performed the surgery. Plaintiff issued Requests for Production to Zimmer seeking, among other things, "investigations, interviews, notes of interviews or information ascertained … in connection with the implant system." *Id*. at *2. Zimmer produced responsive documents, but omitted a Complaint Detailed Summary Report ("CDSR") prepared by Zimmer's litigation department – which included details about Zimmer's investigation of Plaintiff's allegations, including witness interviews and an alleged party admission by O'Shea that her surgical technique caused the product failure. *Id.* Zimmer did not produce the CDSR until the last day of discovery (about five months after Zimmer had made its prior production). About three months later, Zimmer produced an updated CDSR.

Plaintiff and O'Shea filed motions for sanctions under Rule 37(c) based on Zimmer's untimely production. In response, Zimmer asserted that its delay was inadvertent and the product of oversight, noting that the CDSR included exculpatory evidence Zimmer would have been eager to produce. Zimmer's counsel, Mr. Reilly, submitted an affidavit addressing these points and taking responsibility for the delayed production. But the court rejected these arguments, noting that "inadvertence is not a substantial justification for failing to produce documents under Rule 37(c)(1)" and that Zimmer had failed to explain the search it undertook to locate the omitted documents. *Id*. at *6. The Court sanctioned both Zimmer and its counsel, finding that the moving parties had been prejudiced because they did not have the benefit of the withheld CDSR when depositions were conducted, and that O'Shea had suffered additional prejudice because "she had been deposed without having the opportunity to review the CDSR and her alleged party admission" which resulted in her "giving testimony without knowledge of relevant and germane information." *Id*. at *9.

As sanctions, the Court reopened discovery and awarded the moving parties their reasonable expenses and attorney's fees incurred in connection with that discovery as well as the motions for sanctions. *Id*. at *10. The Court declined O'Shea's request to exclude her alleged party admission and the CDSR as a form of sanctions only because it found that doing so would further penalize Plaintiff for Zimmer's misconduct and would therefore be unfair. *Id.* at *9. However, the Court denied this relief *without* prejudice, noting that O'Shea would be given the opportunity to file a motion *in limine* seeking to suppress the evidence at the close of discovery because the Court was concerned that reopening discovery might not cure the prejudice to O'Shea caused by Zimmer's late production. *Id*.

As in *O'Shea*, here, Defendants' Motion for Sanctions involves a party's failure to provide significant investigation documents which go to core issues in the litigation and purportedly contain party admissions. Plaintiff and Mr. Newman (like Zimmer and its counsel) have not provided a legitimate justification for their failure to produce the Investigation Documents sooner and have not explained what efforts they made to obtain these documents in response to Defendants' document requests. Indeed, the conduct of Mr. Newman in this case is even more egregious than that of Zimmer's counsel (who claimed inadvertence), as the evidence establishes Mr. Newman had knowledge and possession of the Investigation Documents by January 2, 2024, but chose to deliberately withhold them from Defendants until after he had questioned Defendants Armstrong and Hopwood about them at their depositions. This was not mere inadvertence – it was a clear ambush tactic which violated the rules of discovery and is intolerable under the law. *See Fair Hous. Ctr. of Greater Palm Beaches, Inc. v. Cornerstone Residential Mgmt., LLC*, No. 05-80954-CIV, 2009 WL 10669135, at *2 (S.D. Fla. Oct. 6, 2009) ("this court does not condone the concept of trial by ambush"); *see also Petit v. State Farm Mut. Auto. Ins. Co.*, No. 618CV1190ORL78LRH, 2021 WL 8825386, at *1 (M.D. Fla. Jan. 12, 2021) (same); *Bostick v. State Farm Mut. Auto. Ins. Co.*, No. 8:16-CV-1400-T-33AAS, 2017 WL 4518665, at *2 (M.D. Fla. Oct. 10, 2017) ("The purpose of discovery under the Federal Rules of Civil Procedure is to require the timely disclosure of relevant information to aid in the ultimate resolution of disputes in a civil action. These Rules make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.") (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, (1958) (internal quotations omitted)).

It is Plaintiff's burden to establish that the violations detailed herein were harmless – *i.e.*, that they did not cause any prejudice to the Defendants – to avoid sanctions. Notwithstanding,

Defendants have demonstrated actual prejudice from each of these violations. Like the movants in *O'Shea*, the Defendants were prejudiced by Plaintiff's violations of his discovery obligations because they resulted in depositions being conducted without Defendants having the benefit of the Investigation Documents.[9] Furthermore, Defendants Armstrong and Hopwood suffered additional prejudice because they were deposed without the benefit of reviewing their purported statements and admissions, as memorialized in the interview notes. Unlike in *O'Shea*, where the Court found it was improper to exclude the CDSR and O'Shea's deposition testimony because it would be unfair to the other movant (who was also prejudiced by Zimmer's late disclosure), here, the exclusion of the Investigation Documents and Armstrong and Hopwood's deposition testimony is appropriate because it would be curative for all Defendants.

Notably, Mr. Newman has twice suggested that Defendants will not be prejudiced by his violations because they would have the opportunity to conduct discovery *after* the late production of the Investigation Documents. *See* Aff. ¶ 18 ("In terms of potential prejudice, Defendants will have had the recently produced documents two weeks before the continued depositions of Messrs. Hopwood and Armstrong, and before the depositions of the Waller witnesses who are scheduled to testify on February 5-8."); *see* Ex. 14, Tr. 17:4-11 ("The Hopwood deposition and the Armstrong deposition are scheduled to continue the week after next and anybody can use these documents at those depositions. So there's no prejudice to the defendants with regard to those depositions because they have the notes and they will have two weeks in which to look, review, do whatever they want with regard to the notes."). Mr. Newman ignores the fact that depositions of numerous

---

[9] This impact is obvious in the context of Plaintiff's failure to produce the Investigation Documents themselves. But it is also a logical result of Plaintiff's failure to timely provide Defendants with the documents Waller produced pursuant to their subpoena. If Plaintiff had complied with his obligations under the Order on Non-Party Production, Defendants would have had all of Waller's documents by September 26, 2023, and would have had the opportunity to address the fact that the interview notes were missing. Instead, Plaintiff waited until January 16, 2024 to dump over 12,000 Waller documents on Defendants, depriving them of the opportunity to determine what was and wasn't produced in advance of critical depositions.

non-party witnesses (who reside out of State and cannot be compelled to appear at trial) were conducted *before* Defendants had access to the documents.

Likewise, Messrs. Armstrong and Hopwood have *already* provided testimony without the benefit of reviewing the Investigation Documents and their purported party admissions. Even if the continuation of Armstrong and Hopwood's depositions could cure this prejudice (it can't), Mr. Newman's recent conduct has foreclosed such remedy because – during the continuation of Hopwood's deposition, on February 21 – he took the position that the Defendants were not entitled to ask the witness any questions, and prevented defense counsel from doing so.[10] This conduct flies in the face of Mr. Newman's prior representations to the Court, and constitutes a flagrant violation of another of the Court's discovery orders (ECF 309, which governs time allotment for all depositions taken on or after the date of the order, and clearly entitled Defendants to ask questions at Mr. Hopwood's continued deposition).

**WHEREFORE**, Defendants request that the Court enter appropriate sanctions against Plaintiff pursuant to Rule 37 including, without limitation: 1) exclusion of the Investigation Documents from evidence; 2) exclusion of Messrs. Armstrong and Hopwood's deposition testimony pertaining to what they did or did not say during the interviews conducted by the Waller attorneys; 3) exclusion of any other witness testimony pertaining to the Investigation Documents; 4) requiring Plaintiff to pay reasonable expenses and attorneys' fees caused by his violations, including, without limitation, all expenses and attorneys' fees incurred in connection with this motion; and 5) fashioning other sanctions or granting other relief as this Court deems just and appropriate.

Dated:  February 23, 2024.

---

[10] Defendants have not yet obtained the transcript from Hopwood's deposition. They will present it to the Court in a supplemental filing once it is received.

**BRODSKY FOTIU-WOJTOWICZ, PLLC**
*Attorneys for Defendants Peter Baronoff, Melinda Baronoff and Shana Baronoff*
200 SE 1st Street, Suite 400
Miami, FL 33131
Telephone: (305) 503-5054
Facsimile: (786) 749-7644

By: /s/ Benjamin H. Brodsky
BENJAMIN H. BRODSKY
Florida Bar No.: 73748
bbrodsky@bfwlegal.com
docketing@bfwlegal.com

**TEIN MALON PLLC**
*Attorneys for Defendant Keith Reuben*
3059 Grand Avenue
Suite 340
Coconut Grove, FL 33133
Telephone: (305) 442-1101

By: /s/ Gaye L. Huxoll
MICHAEL R. TEIN
Florida Bar No.: 993522
tein@teinmalone.com
GAYE L. HUXOLL
Florida Bar No.: 149497
ghuxoll@teinmalone.com

**PARKER HUDSON RAINER & DOBBS LLP**
*Attorneys for Defendants Stanley Grabish and Steven Helland*
215 South Monroe Street, Suite 750
Tallahassee, FL 32301
Telephone: (850) 681-0191

By: /s/ Seann M. Frazier

    SEANN M. FRAZIER
    Florida Bar No. 971200
    sfrazier@phrd.com
    BRYAN E. BATES

**KAPLAN ZEENA LLP**
*Attorneys for Defendants Brian Dunn, David Armstrong, Richard Gold and Bryan Day*
2 South Biscayne Blvd, Suite 3050
Miami, FL 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801

By: /s/ James M. Kaplan
JAMES M. KAPLAN
Florida Bar No.: 921040
james.kaplan@kaplanzeena.com
elizabeth.salom@kaplanzeena.com
NOAH E. SNYDER
Florida Bar No.: 107415
noah.snyder@kaplanzeena.com

**BURR & FORMAN LLP**
*Attorneys for Defendant James Hopwood*
222 Delaware Avenue
Suite 1030
Wilmington, DE 19801
Telephone: (302) 830-2311

By: /s/ John O'Shea Sullivan
JOHN O'SHEA SULLIIVAN
(admitted pro hac vice)
rr@burr.com

Devin C. Dolive (admitted pro hac vice)
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
ddolive@burr.com

Andrew T. Sarangoulis
Florida Bar No.: 1002608
Las Olas Centre II
350 East Las Olas Blvd., Suite 1440
Ft. Lauderdale, FL 33301
Telephone: (954) 414-6200
asarangoulis@burr.com

Georgia Bar No. 140856
(admitted pro hac vice)
bbates@phrd.com
MATTHEW M. WEISS
Georgia Bar No. 718795
(admitted pro hac vice)
mweiss@phrd.com
303 Peachtree Street NW,
Suite 3600
Atlanta, GA  30308
Telephone: (404) 420-4333

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on this  23rd  day of February, 2024, on all counsel or parties of record.

/s/ James M. Kaplan
JAMES M. KAPLAN